UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
(Miami Division)

Case Number:

ROBERT HODGES,

   Plaintiff,

vs.

MIAMI-DADE COUNTY,
FLORIDA,

   Defendant.
_____/

**Complaint**

Plaintiff, Robert Hodges, sues defendant, Miami-Dade County, Florida, and shows:

1. This is a discrimination action by Robert Hodges, a Black 14-year fire fighter/paramedic whom Miami-Dade County fired from its Fire Rescue Department based on allegations that he failed a return-to-work drug test after he had been suspended for testing positive after taking CBD (not ingesting cannabis), although, A) his test results were within passing limits, both initially and on a re-test, and B) on information and belief, a white MDFR lieutenant who was both on a last-chance contract for drug usage, and on a promotional list for captain, was not fired but was promoted in or about 2019 after testing positive for cocaine.  Plaintiff's termination also came

1

shortly after he gave Miami Dade Fire Rescue papers asking for a reasonable accommodation for Kerataconus, a corneal condition, which is controlled with contact lenses.

2. Accordingly, Plaintiff sues under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq ("Title VII"), the Americans with Disabilities Act of 1990 and the Florida Civil Rights Act of 1992, Chapter 760, Florida Statutes ("FCRA"), for damages and equitable relief, reasonable attorney's fees and litigation expenses.

## Jurisdiction and Venue

3. The court has jurisdiction under 28 U.S.C. § 1331 (federal question). The court has supplemental jurisdiction under 28 U.S.C. § 1367 to hear plaintiff's state law claims under the FCRA.

4. Venue is proper in the Southern District of Florida under 28 U.S.C. § 1391(b) because the claims arose here and defendant is submitted to personal jurisdiction there.

## Parties

5. Plaintiff, Robert Hodges, at all times material was employed by Miami-Dade County as a firefighter/paramedic with the Miami Dade Fire Rescue ("MDFR"), and as such, was an "employee" or "aggrieved person" under Title VII, the ADA and the FCRA. He is protected by:

    a. Title VII and the FCRA because of his race (black);

2

b.     The ADA and the FCRA based on his disability (Kerataconus, a corneal condition) and wrongly perceived disability (substance-abuse)

6.     Defendant, Miami-Dade County, Florida ("the County" or "defendant"), is a Florida charter county. It is, and, at all times material, was an "employer" as envisioned by Title VII, the ADA and the FCRA.

### Satisfaction of conditions precedent

7.     Plaintiff, on or about July 21, 2020, filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging race discrimination and disability discrimination, which by operation of law was deemed dual filed with the Florida Commission on Human Relations and sufficient to invoke his rights and remedies under the FCRA ("COD").

8.     On or about May 20, 2022, the United States Department of Justice, issued plaintiff a Notice of Right to Sue (Issued on Request).

9.     More than 180 days elapsed from the filing of plaintiff's charge of discrimination without the Florida Commission on Human Relations either conciliating the charge or making a no-cause finding against plaintiff.

10.    All other conditions precedent to bringing this action, if any, have been satisfied, have been waived or would have been futile.

**General Allegations**

11. Plaintiff was hired by Defendant on October 11, 2005 as a Firefighter. He subsequently obtained a paramedic license and other certifications and received clearance to work at the Miami Airport.

12. During his tenure with the Department, Plaintiff received several commendations for job performance and his evaluations were all satisfactory or above.

13. On or about June 22, 2018, Plaintiff hurt his shoulder while pulling a hose. He was subsequently diagnosed with a torn labrum and placed on worker's compensation until he could return to duty on or about April 19, 2019.

14. Plaintiff incurred a second on the job injury on May 17, 2019 when he tore his Achilles. He was given pain medication during his treatment and physical therapy for the injury.

15. MDFR policy requires employees are required to undergo annual physical exams which includes drug testing for safety-sensitive positions. Miami Dade County has its own protocol for drug testing which utilizes a split urine sample. If the first sample indicates positive for any listed drug, the second part of the sample is tested using gas chromatography/mass spectrometry technique. The protocol further sets the level of ng/ml needed for a positive reading on this second test.

16.     One of the prohibited drugs is Cannabinoid Metabolites, commonly known as marijuana.  If the first test shows a level of at least 40 ng/ml it is flagged as potentially positive and if the second test shows a level of 20 or higher it is confirmed as positive.

17.     When Plaintiff underwent his annual physical examination in September 2019, his drug test was positive for cannabis on both the first test and the confirmatory test.

18.     Because Plaintiff tested positive, he was notified of potential discipline to be taken against him and Defendant offered him a Career Long Agreement as a resolution to the issue.  As part of this "last chance agreement" Hodges was directed to go to EAP and submit to random testing and any test results would be provided to the County upon request.

19.     In accordance with the Career Long Agreement Hodges was directed to take a drug test by EAP on December 12, 2019. The test was by a Company called AnyLabTest and the results were negative.  Less than three weeks later, EAP sent plaintiff for another random test on December 30, 2019 and once again the results were negative.

20.     On January 6, 2020, the County ordered Plaintiff to submit to his third random drug test in less than 30 days through EAP, this time for the purpose of clearing him to return to full duty.  Since Hodges had not

consumed any illegal drugs, he assumed that he would be returning to work shortly after the test.

21. In The County's Reasonable Accommodation Procedure requires an employee seeking an ADA accommodation to complete a Reasonable Accommodation Request Form. In anticipation of his imminent return to work, and in consultation with his physician, Hodges submitted a formal request for reasonable accommodations on January 7, 2020, seeking a shift change and an assignment to the Hazmat unit. The request was based on his diagnosis of Kerataconus, a condition caused when the cornea — the clear, dome-shaped front surface of the eyeball — thins and gradually bulges outward into a cone shape. Although the condition can be partially mitigated by eye drops and special contact lenses, a cone-shaped cornea can still cause blurred vision and may cause sensitivity to light and glare.

22. Due to his Kerataconus, plaintiff's doctor recommended that he not be required to work the 24-hour shifts required of most firefighters and EMTs. The concern was that during a 24-hour shift, the firefighters/EMTs sometimes sleep at the station in between calls, and since plaintiff could not sleep with his contact lenses he might delay or hinder operations – where the difference of just a few minutes of response time can be critical -- if there was an emergency call and he had to take the three to five minutes he needed to clean his eyes, take the eye drops and put in his contact lenses.

By contrast, the Hazmat unit worked only day shifts, and the employees did not sleep between calls.

23. Upon information and belief, defendant has routinely granted requests of other firefighters/EMT to work day shifts due to medical conditions that would be exacerbated by or pose risks to operations during a typical 24-hour shift.

24. Two days later after submitting his accommodations request, on January 9, 2020, plaintiff was advised that he had tested positive for marijuana. Hodges was extremely upset when he heard this since he had not taken any illegal substances, he been drug tested three times before this test and all of the results were negative.

25. When plaintiff requested copies of his test results from the Lab where he tested previously negative, he saw that the testing level they used for an initial positive result was 50, as opposed to the level of 40 ng/ml under the County protocol. His most recent test at the County's lab on January 6, 2020 also showed a level of 40 for the first test and 19.6 for the confirmatory test. Under the defendant's own protocol, these numbers on their face did not support a confirmed positive result for the second part of the split sample.

26. Despite the facially negative results of the January 6, 2020 drug test, Hodges was notified of possible discipline and on March 9, 2020

7

he received a Disciplinary Action Report (DAR) alleging violations of Miami-Dade County Personnel Rules I, L and N; MDFR Policy & Procedure 1.A.7; the terms of a 2007 Settlement Agreement; and the terms of the 2019 Agreement.

27. In response to the DAR, Hodges argued that the reading on the confirmatory test of 19.6, which was below the threshold listed in the Protocol which said 20 or higher was a positive and he requested a third test be performed to resolve any differences between the first two tests.

28. On June 22, 2020 the County rejected the request for a third test stating that the two tests both already showed positive. MDFR's Fire Chief Alan R. Cominsky then issued a dismissal letter to Hodges on June 29, 2020, which terminated his employment effective July 13, 2020.

29. On April 29, 2022, Arbitrator Fredric Dichter sustained Plaintiff's grievance under the CBA and ordered his reinstatement.

30. In his Decision and Award, after giving the parties the full opportunity to present testimony and evidence and file post-hearing briefs, Arbitrator Dichter made the following factual finding:

> The protocol says 20 ng/ml or higher is viewed as positive. Grievant argues he did not reach that number as the test showed 19.6 ng. Dr. Halpern, the Medical Review Officer, concluded the confirmatory test was positive even though it was below the threshold. On what basis he reached that conclusion is unclear? Dr. Halpern did not testify at the hearing to explain his finding. There may be an explanation, but none was forthcoming. The only evidence offered to prove there was a violation of the Agreement was the test result and per the protocol the

results show the opposite. . . Under the Protocol standards, Grievant did not test positive and consequently, he did not violate the Career Long Agreement. Accordingly, the discharge cannot be sustained.

31. Instead of complying with the arbitration award that found the County's own test results did not support Hodge's termination, on July 28, 2022, defendant filed an action to vacate the arbitration award in the Circuit Court for the Eleventh Judicial District in and for Miami-Dade County.

32. Defendant cannot offer a legitimate non-discriminatory reason for plaintiff's termination, since it has already been determined, based on defendant's own records, that Hodges confirmation test (which is the sole basis cited for the termination decision) showed only 19.6 ng of Cannabinoid Metabolites and therefore did not violate the County's Protocol which required a reading of 20 ng or higher for a confirmation test.

33. In addition, and upon information and belief, a white MDFR lieutenant who was both on a last-chance contract for drug usage, and on a promotional list for captain, was not fired but was promoted in or about 2019 after testing positive for cocaine.  Plaintiff is also aware of other non-black employees who were treated more favorably by defendant with respect to the discipline taken following a failed drug test or evidence of substance abuse.

## Count I — Race Discrimination in Violation of Title VII

34. Plaintiff realleges and incorporates in this Count the matters set forth in ¶¶ 1-3, 5-10, 11-20, 24-33.

35. Title VII of the Civil Rights Act of 1964, as amended, provides in pertinent part, at 42 U.S.C. § 2000e-2(a) as follows:

It shall be an unlawful employment practice for an employer —

(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or

(2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

36. The treatment to which defendant, through its agents and employees, subjected plaintiff Hodges was visited upon him because of his race, and, thus, constituted race discrimination as proscribed by Title VII.

37. As a direct, natural, proximate and foreseeable result of the actions of defendant, plaintiff has suffered past and future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

38. The discrimination that plaintiff is suffering, in violation of his statutory rights to be free from such discrimination, constitutes irreparable harm for which there is no adequate remedy at law.

39. Plaintiff is entitled to recover attorney's fees and litigation expenses under 42 U.S.C. § 2000e-5(k).

WHEREFORE, plaintiff, Robert Hodges, prays that this Court will:

***One***, issue a declaratory judgment that defendant's practices toward plaintiff violated his rights against race discrimination under Title VII;

***Two***, award judgment against defendant for the back pay and benefits to which plaintiff would have been entitled but for defendant's discriminatory acts;

***Three***, enjoin defendant and its agents from continuing to violate plaintiff's statutory rights under Title VII and to make plaintiff whole through instatement, back pay and restoration of seniority and benefits, or, if that is not practical, through an award of front pay;

***Four***, enter a judgment for plaintiff and against defendant for damages, including compensatory damages;

***Five***, grant plaintiff his costs and reasonable attorney's fees pursuant to 42 U.S.C. § 2000e-5(k), and

***Six***, grant plaintiff such other and further relief as the circumstances and law provide.

## **Count II — Race Discrimination in Violation of the FCRA**

40. Plaintiff realleges and incorporates in this Count the matters set forth in ¶¶ 1-3, 5-10, 11-20, 24-33.

41. Section 760.10(1), FLA. STAT., provides in pertinent part:

It is an unlawful employment practice for an employer:

(a) To discharge or to fail or refuse to hire any individual, or otherwise to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, pregnancy, national origin, age, handicap, or marital status.

(b) To limit, segregate, or classify employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities, or adversely affect any individual's status as an employee, because of such individual's race, color, religion, sex, pregnancy, national origin, age, handicap, or marital status.

42. The treatment to which defendant, through its agents and employees, subjected Hodges was visited upon him because f his race, and, thus, constituted race discrimination as proscribed by the FCRA.

43. As a direct, natural, proximate and foreseeable result of the actions of defendant, plaintiff has suffered past and future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

44. The discrimination that plaintiff is suffering, in violation of his statutory rights to be free from such discrimination, constitutes irreparable harm for which there is no adequate remedy at law.

45. Plaintiff is entitled to recover attorney's fees and litigation expenses under § 760.11(5), FLA. STAT.

WHEREFORE, plaintiff, Robert Hodges, prays that this Court will:

**One**, issue a declaratory judgment that defendant's practices toward plaintiff violated his rights against race discrimination under the FCRA;

**Two**, award judgment against defendant for the back pay and benefits to which plaintiff would have been entitled but for defendant's discriminatory acts;

**Three**, enjoin defendant and its agents from continuing to violate plaintiff's statutory rights under the FCRA and to make plaintiff whole through instatement, back pay and restoration of seniority and benefits, or, if that is not practical, through an award of front pay;

**Four**, enter a judgment for plaintiff and against defendant for damages, including compensatory damages;

**Five**, grant plaintiff his costs and reasonable attorney's fees pursuant to § 760.11(5), FLA. STAT.; and

**Six**, grant plaintiff such other and further relief as the circumstances and law provide.

### Count III – Disability Discrimination in Violation of the ADA

46. Plaintiff realleges and incorporates in this Count the matters set forth in ¶¶ 1-3, 5-10 and 11-31.

47. The Americans with Disabilities Act of 1990, as amended provides in pertinent, at 42 U.S.C. 12112(a), as follows: "No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."

48. The treatment to which defendant, through its agents and employees, subjected plaintiff Hodges was visited upon him because of his disability, and, thus, constituted discrimination as proscribed by the ADA.

49. As a direct, natural, proximate and foreseeable result of the actions of defendant, plaintiff has suffered past and future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

50. The discrimination that plaintiff is suffering, in violation of his statutory rights to be free from such discrimination, constitutes irreparable harm for which there is no adequate remedy at law.

51. Plaintiff is entitled to recover attorney's fees and litigation expenses under 42 U.S.C. § 2000e-5(k).

WHEREFORE, plaintiff, Robert Hodges, prays that this Court will:

***One***, issue a declaratory judgment that defendant's practices toward plaintiff violated his rights against disability discrimination under the ADA;

***Two***, award judgment against defendant for the back pay and benefits to which plaintiff would have been entitled but for defendant's discriminatory acts;

***Three***, enjoin defendant and its agents from continuing to violate plaintiff's statutory rights under the ADA and to make plaintiff whole through instatement, back pay and restoration of seniority and benefits, or, if that is not practical, through an award of front pay;

***Four***, enter a judgment for plaintiff and against defendant for damages, including compensatory damages;

***Five***, grant plaintiff his costs and reasonable attorney's fees pursuant to 42 U.S.C. § 2000e-5(k), and

***Six***, grant plaintiff such other and further relief as the circumstances and law provide.

### **Count IV — Handicap Discrimination in Violation of the FCRA**

52.  Plaintiff realleges and incorporates in this Count the matters set forth in ¶¶ 1-3, 5-10 and 11-31.

53.  Section 760.10(1), FLA. STAT., provides in pertinent part:

It is an unlawful employment practice for an employer:

(a) To discharge or to fail or refuse to hire any individual, or otherwise to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, pregnancy, national origin, age, handicap, or marital status.

15

(b) To limit, segregate, or classify employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities, or adversely affect any individual's status as an employee, because of such individual's race, color, religion, sex, pregnancy, national origin, age, handicap, or marital status.

54. The treatment to which defendant, through its agents and employees, subjected Hodges was visited upon him because of his handicap and his request for reasonable accommodations, and thus, constituted handicap discrimination as proscribed by the FCRA.

55. As a direct, natural, proximate and foreseeable result of the actions of defendant, plaintiff has suffered past and future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

56. The discrimination that plaintiff is suffering, in violation of his statutory rights to be free from such discrimination, constitutes irreparable harm for which there is no adequate remedy at law.

57. Plaintiff is entitled to recover attorney's fees and litigation expenses under § 760.11(5), FLA. STAT.

WHEREFORE, plaintiff, Robert Hodges, prays that this Court will:

***One***, issue a declaratory judgment that defendant's practices toward plaintiff violated his rights against handicap discrimination under the FCRA;

***Two***, award judgment against defendant for the back pay and benefits to which plaintiff would have been entitled but for defendant's discriminatory acts;

***Three***, enjoin defendant and its agents from continuing to violate plaintiff's statutory rights under the FCRA and to make plaintiff whole through instatement, back pay and restoration of seniority and benefits, or, if that is not practical, through an award of front pay;

***Four***, enter a judgment for plaintiff and against defendant for damages, including compensatory damages;

***Five***, grant plaintiff his costs and reasonable attorney's fees pursuant to § 760.11(5), Fla. Stat.; and

***Six***, grant plaintiff such other and further relief as the circumstances and law provide.

## Demand for Trial by Judge

Plaintiff demands trial by Judge.

Respectfully Submitted,

THE AMLONG FIRM
500 NE Fourth St., Suite 101
Fort Lauderdale, Florida 33301
(954) 462-1983
EService@TheAmlongFirm.com


/s/ *William R. Amlong*
WILLIAM ROBERT AMLONG
Florida Bar Number 275565

                Wramlong@TheAmlongFirm.com
                CHRISTOPHER C. SHARP, of Counsel
                Florida Bar No. 996858

                ***Attorneys for Plaintiff,***
                    ***Robert Hodges***

                Dated:  August 17, 2022