UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 22-cv-22640-BLOOM/Otazo-Reyes

ROBERT HODGES,

    Plaintiff,

v.

MIAMI-DADE COUNTY,

    Defendant.

_____/

**OMNIBUS ORDER ON MOTION FOR SUMMARY JUDGMENT AND MOTION TO AMEND COMPLAINT**

**THIS CAUSE** is before the Court upon Defendant Miami-Dade County's Motion for Summary Judgment, ECF No. [16] ("Motion"). Plaintiff Robert Hodges filed a Response in Opposition, ECF No. [34], to which Defendant filed a Reply, ECF No. [38]. Plaintiff has filed a Motion to Amend Complaint by Withdrawal of Counts III and IV, ECF No. [32] ("Motion to Amend"), to which Defendant filed a Response in Opposition, ECF No. [39], and Plaintiff filed a Reply, ECF No. [41]. The Court has reviewed the Motions, all supporting and opposing submissions,[1] the record in this case, the applicable law, and is otherwise fully advised. For the reasons set forth below, Defendant's Motion is granted and Plaintiff's Motion to Amend is denied as moot.

**I. BACKGROUND**

---

[1] Defendant filed a Statement of Material Facts ("SMF") with its Motion, ECF No. [15]. Plaintiff filed a Response in Opposition to Defendant's Statement of Material Facts and Statement of Additional Material Facts ("SAMF"), ECF No. [26]. Defendant also offered a Reply to Plaintiff's SAMF ("RSAMF"), ECF No. [37].

Case No. 22-cv-22640-BLOOM/Otazo-Reyes

On August 18, 2022, Plaintiff Robert Hodges filed the instant action alleging employment discrimination on the basis of race and disability. *See* ECF No. [1]. Specifically, in his Complaint, Plaintiff alleges the following claims against his former employer, Miami-Dade County: Race Discrimination in Violation of Title VII (Count I); Race Discrimination in Violation of the Florida Civil Rights Act ("FCRA") (Count II); Disability Discrimination in Violation of the Americans with Disabilities Act ("ADA") (Count III); and Handicap Discrimination in Violation of the FCRA (Count IV). *Id.*

On July 19, 2023, Defendant filed its Motion asserting that the undisputed material facts establish that Defendant terminated Plaintiff for a legitimate, nondiscriminatory reason, and no reasonable juror could find that reason was a pretext for discrimination. *See generally* ECF No. [16]. Plaintiff responds that he can make out a *prima facie* case of race discrimination and show that Defendant's proffered non-discriminatory reason for his discharge was pretextual. *See generally* ECF No. [34]. Defendant replies that Plaintiff fails to establish a *prima facie* case of racial discrimination. ECF No. [38].

On August 28, 2023, Plaintiff filed his Motion to Amend seeking to voluntarily dismiss his disability claims, Counts III and IV. *See generally* ECF No. [32].

### A. MATERIAL FACTS

Based on the Parties' briefings and the evidence in the record, the following facts are not genuinely in dispute unless otherwise noted.

Plaintiff began his employment as a Fire Fighter with Miami-Dade County in October 2005. SMF ¶ 1; SAMF ¶ 1. In 2007, Plaintiff signed the signatures of other officers who had filled out Plaintiff's evaluation but forgot to sign. SMF ¶2. In lieu of termination, Plaintiff signed a Settlement Agreement and Release Between Plaintiff and Defendant ("2007 Agreement"). SMF

¶¶ 2-3; SAMF ¶¶ 2-3. Under the terms of the 2007 Agreement, Plaintiff agreed not to violate any provisions of current or future collective bargaining agreements or policies and procedures of Miami-Dade Fire Rescue ("MDFR") or of Defendant Miami-Dade County. SMF ¶ 4; SAMF ¶ 4. The 2007 Agreement specifically provided that such violations may result in immediate dismissal from Miam I-Dade County without the right to appeal. SMF ¶ 5.

On September 12, 2019, Plaintiff took a county drug test during his annual physical, and the results came back positive for THC. ECF No. [15-1] at 199; SMF ¶¶ 7-8; SAMF ¶¶ 7-8, 50, 52. MDFR issued Plaintiff a Disciplinary Action Report on October 29, 2019 ("2019 DAR"), based on the September 2019 positive drug test, which violated the 2007 Agreement as well as Defendant's policies and procedures. SMF ¶ 9; SAMF ¶ 9. The 2019 DAR recommended Plaintiff's dismissal from employment. SMF ¶ 10; SAMF ¶ 10. However, instead of dismissal, Plaintiff signed a Career Long Agreement and Release between Plaintiff and Defendant on December 5, 2019 ("2019 Agreement"). SMF ¶ 11; SAMF ¶ 11. The 2019 Agreement prohibited Plaintiff from reporting for duty until he provided MDFR with a negative drug/alcohol test result, performed by the testing laboratory utilized by Defendant. SMF ¶ 13; SAMF ¶ 13.

On January 6, 2020, Plaintiff took another county drug test. SMF ¶ 17; SAMF ¶ 17; ECF No. [15-1] at 191. A doctor called Plaintiff and informed Plaintiff that his results were positive for THC approximately three days after Plaintiff took the drug test. SMF ¶ 18; SAMF ¶¶ 18, 59. It is disputed whether Plaintiff subsequently failed a second drug test under Defendant's testing protocols. SAMF ¶¶ 59-62; RSAMF ¶¶ 59-62.

On March 10, 2020, Plaintiff received a letter from Deputy Fire Chief Arthur L. Holmes, stating that a recommendation for his dismissal from employment with MDFR had been forwarded to Fire Chief Alan Cominsky. SMF ¶ 20; SAMF ¶ 20. Plaintiff met with Fire Chief Cominsky

between March 9, 2020 and June 29, 2020. SMF ¶ 21; SAMF ¶ 21. Fire Chief Cominsky made the decision to terminate Plaintiff from his employment, effective July 13, 2020. SMF ¶ 22; SAMF ¶ 22. Deputy Fire Chief Holmes and Fire Chief Cominsky were the only two individuals responsible for Plaintiff's termination. SMF ¶ 23; SAMF ¶ 23.

Plaintiff identifies as being a Black Hispanic. Hodges Depo, 155:9-11. Neither Deputy Fire Chief Holmes nor Fire Chief Cominsky referred to Plaintiff's race when they met with Plaintiff, and Plaintiff did not hear either Deputy Fire Chief Holmes or Fire Chief Cominsky make any derogatory remarks about African American or Hispanic individuals. ECF No. [15-1] at 155; ¶¶ 23, 27-28, 30; SAMF ¶¶ 23, 27-28, 30.

Plaintiff claims that his eye condition is a disability. ECF No. [15-1] at 169-70. Plaintiff was diagnosed with this eye condition prior to being hired by Defendant. *Id.* at 170. Plaintiff never discussed his eye condition with Deputy Fire Chief Holmes or Fire Chief Cominsky. *Id.* at 171.Plaintiff requested an accommodation from MDFR based on his eye condition on January 8, 2020. *Id.* at 177. Plaintiff does not recall any MDFR employees or Defendant's employees discussing his eye condition after he requested an accommodation from MDFR, or any discussion of Plaintiff's accommodation request. *Id.* at 178.

Plaintiff's former colleague, then-Lieutenant Brian Brunetti, is a Caucasian male. SAMF ¶ 64; SMF ¶ 64. On February 20, 2019, Lieutenant Brunetti took a random drug test and the results came back positive for a controlled substance. *Id.* Lieutenant Brunetti was recommended for dismissal based on the terms of his employment agreement, but he was not terminated and was promoted to Captain on April 10, 2019. SAMF ¶¶ 65-66; SMF ¶¶ 65-66.

## II.  LEGAL STANDARD

A party may obtain summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is genuine if "a reasonable trier of fact could return judgment for the non-moving party." *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1243 (11th Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.* (quoting *Anderson*, 477 U.S. at 247-48). The Court views the facts in the light most favorable to the non-moving party and draws all reasonable inferences in the non-moving party's favor. *See Davis v. Williams*, 451 F.3d 759, 763 (11th Cir. 2006). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which a jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. Further, the Court does not weigh conflicting evidence. *See Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1140 (11th Cir. 2007) (quoting *Carlin Comm'n, Inc. v. S. Bell Tel. & Tel. Co.*, 802 F.2d 1352, 1356 (11th Cir. 1986)).

The moving party shoulders the initial burden of showing the absence of a genuine issue of material fact. *Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir. 2008). Once this burden is satisfied, "the nonmoving party 'must do more than simply show that there is some metaphysical doubt as to the material facts.'" *Ray v. Equifax Info. Servs., L.L.C.*, 327 F. App'x 819, 825 (11th Cir. 2009) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)). Instead, "the non-moving party 'must make a sufficient showing on each essential element of the case for which he has the burden of proof.'" *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). Accordingly, the non-moving party must produce evidence, going beyond the pleadings, and by its own affidavits, or by depositions,

5

answers to interrogatories, and admissions on file, designating specific facts to suggest that a reasonable jury could find in the non-moving party's favor. *Shiver*, 549 F.3d at 1343. Even "where the parties agree on the basic facts, but disagree about the factual inferences that should be drawn from those facts," summary judgment may be inappropriate. *Warrior Tombigbee Transp. Co., Inc. v. M/V Nan Fung*, 695 F.2d 1294, 1296 (11th Cir. 1983).

**III. DISCUSSION**

Defendant contends it is entitled to summary judgment "because no reasonable juror could find that the County's legitimate business reason for Hodges termination—his second positive drug test—was pretext for discrimination based on his race or alleged disability." Motion at 1-2. Plaintiff responds that "he can show that the County's proffered legitimate nondiscriminatory reason for plaintiff's discharge . . . was non-existent." Response at 2.

**A. Racial Discrimination**

Title VII makes it unlawful for an employer to discriminate against an employee "because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).[2] To survive summary judgment, a plaintiff must "present sufficient facts to permit a jury to rule in her favor," which may be accomplished through: (1) "direct evidence of discriminatory intent," (2) "a 'convincing mosaic' of circumstantial evidence that warrants an inference of intentional discrimination," or (3) "satisfying the burden-shifting framework set out in *McDonnell Douglas*." *Lewis v. City of Union City, Georgia*, 918 F.3d 1213, 1220 n.6 (11th Cir. 2019) (citing *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011)). Under *McDonnell Douglas*, "the plaintiff bears the initial burden of establishing a *prima facie* case of discrimination by showing

---

[2] "Because the [Florida Civil Rights Act] is modeled after Title VII, and claims brought under it are analyzed under the same framework, the state-law claims do not need separate discussion and their outcome is the same as the federal ones." *Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1271 (11th Cir. 2010) (internal citation omitted).

(1) that she belongs to a protected class, (2) that she was subjected to an adverse employment action, (3) that she was qualified to perform the job in question, and (4) that her employer treated 'similarly situated' employees outside her class more favorably." *Id.* at 1220-21. Then, "the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its actions." *Id.* at 1221. If the defendant succeeds, "the plaintiff must then demonstrate that the defendant's proffered reason was merely a pretext for unlawful discrimination, an obligation that merges with the [plaintiff's] ultimate burden of persuading the [factfinder] that she has been the victim of intentional discrimination." *Id.* (internal quotations omitted).

  i. **Plaintiff's Prima Facie Case**

It is undisputed that there is no evidence of direct discrimination in this case. Motion at 3; Response at 6. It is also undisputed that Plaintiff, who identifies as "Black Hispanic," is a member of a protected class who was terminated from a job that he was qualified to perform. SMF ¶ 25.

To establish a *prima facie* case of racial discrimination, Plaintiff must show (1) that he is a member of a protected class, (2) that he was subjected to an adverse employment action, (3) that he was qualified to perform the job in question, and (4) that his "employer treated 'similarly situated' employees outside [his] class more favorably." *Lewis*, 918 F.3d at 1220 n.6. It is undisputed that Plaintiff, a Black-Hispanic individual who was terminated from a job that he was qualified to perform, has established the first three elements. The parties dispute whether Plaintiff identified a similarly situated employee that was treated more favorably.

Defendant argues that Plaintiff cannot establish a *prima facie* case of racial discrimination because Plaintiff fails to identify "any other MDFR firefighters who tested positive for THC less than one year after signing a career long agreement following a similar violation." Motion at 4. Plaintiff responds that his former coworker, Captain Brunetti, is a similarly situated employee.

Case No. 22-cv-22640-BLOOM/Otazo-Reyes

Response at 8-9. Plaintiff argues that Captain Brunetti is similarly situated because both of their career long agreements provide that they may be terminated for violating Defendant's policies, and Captain Brunetti "violated the same rules and regulations" by testing positive for a controlled substance in violation of his career long agreement. *Id.* Unlike Plaintiff, however, Captain Brunetti was not fired and was later promoted after testing positive for a controlled substance. *Id.*

Defendant replies that Captain Brunetti and Plaintiff are not similarly situated employees despite these commonalities. Reply at 3-6. Defendant concedes that Captain Brunetti also tested positive for a controlled substance in 2019 and was subsequently offered a new career long agreement later that year despite also being recommended for dismissal but contends that "the similarities end there." *Id*. Defendant argues that Plaintiff and Captain Brunetti are not similarly situated because (1) Plaintiff was fired based on a disciplinary report detailing his violations under his 2007 and 2019 career long agreements, not based on the positive drug test itself, (2) unlike Captain Brunetti, Plaintiff tested positive for a controlled substance less than one year after Plaintiff signed his second career long agreement, and (3) Captain Brunetti's experience is irrelevant to Plaintiff's racial discrimination claim because Plaintiff fails to show that the relevant decisionmakers had any knowledge of or involvement in the decision to retain Captain Brunetti. *Id.*

To demonstrate that Captain Brunetti is a similarly situated employee under the *McDonnell Douglas* burden-shifting framework, Plaintiff must show that he and Captain Brunetti were "similarly situated in all material respects." *Lewis*, 918 F.3d at 1218. Determining whether two employees are similarly situated in all material respects must be done on a case-by-case basis, but the Court is not without guideposts. The analysis turns on "substantive likenesses," not "formal labels." *Id.* at 1228. Common examples where a plaintiff and employee are properly deemed

8

similarly situated in all material respects include where the similarly situated employee is (1) "engaged in the same basic conduct (or misconduct) as plaintiff," (2) "subject to the same employment policy, guideline, or rule as the plaintiff," (3) "ordinarily (although not invariably) … under the jurisdiction of the same supervisor as the plaintiff," and (4) "share[s] the plaintiff's employment or disciplinary history …." *Id.* at 1227-28 (internal citations omitted). Defendant concedes that Plaintiff and Captain Brunetti were subject to the same employment policy but contends the remaining three factors are absent. Defendant asserts that Plaintiff's and Captain Brunetti did not engage in the same basic misconduct. The Court disagrees. It is true that Plaintiff tested positive for THC while Defendant did not, yet both Plaintiff and Captain Brunetti tested positive for a controlled substance in violation of Defendant's controlled substance policy. SAMF ¶¶ 64; RSAMF ¶ 64. Defendant argues that binding precedent counsels a different result, yet both cases cited by Defendant feature plaintiffs and employees with considerable differences.[3] The fact that Plaintiff's violation came shortly after signing his career long agreement in December 2019 compared to Captain Brunetti—and the fact that Plaintiff tested positive for THC, unlike Captain Brunetti—fails to disturb the conclusion that this basic misconduct is substantively similar.

Defendant is correct that Plaintiff's and Captain Brunetti's material similarities end with their shared misconduct and employment policies. Plaintiff and Captain Brunetti were not terminated by the same supervisor. *Lewis* instructs that being subject to the same supervisor should "ordinarily" be present, yet the absence of the same supervisor discharging both Plaintiff and Captain Brunetti is non-dispositive. 918 F.3d at 1227-28. The Eleventh Circuit recently reaffirmed

---

[3] *See Anthony v. Georgia*, 69 F.4th 796, 805 (11th Cir. 2023) (finding that the employee was not similarly situated because the only similarities were "that they both were state troopers and they both were investigated for showing up to work intoxicated."); *Lewis v. Sec'y of U.S. Air Force*, No. 20-12463, 2022 WL 2377164 (11th Cir. June 30, 2022) (concluding that plaintiff failed to identify a similarly situated employee because no other employee engaged in similar misconduct).

that "disciplinary measures undertaken by different supervisors *may* not be comparable for purposes of Title VII analysis," but stopped short of finding that a plaintiff must be subjected to disciplinary measures undertaken by the same supervisor to establish a *prima facie* discrimination claim. *See Hester v. Univ. of Alabama Birmingham Hosp.*, 798 F. App'x 453, 457-58 (11th Cir. 2020).

In *Hester*, the Eleventh Circuit determined that plaintiff and another employee were not similarly situated because they did not share the same misconduct, employment or disciplinary history, or supervisors, and the evidence demonstrated that the supervisors were unaware of the disciplinary action the other had taken. *Id.* Here, Plaintiff and Captain Brunetti share the same basic misconduct and are subject to the same employment policies, but their disciplinary history differs, and there is no evidence that the decisionmakers who reviewed Plaintiff and Captain Brunetti's respective violations of their career long agreements were aware of each other's decisions. The lack of a common supervisor therefore cuts against Plaintiff's *prima facie* case, although it does not undermine it entirely.

The final factor, whether Plaintiff and Captain Brunetti share the same employment or disciplinary history, is fatal to Plaintiff's *prima facie* case. Plaintiff and Captain Brunetti share the same basic employment history, but their disciplinary history differs. Plaintiff violated his 2007 Agreement by testing positive for a controlled substance in September 2019, received a new career long agreement in December 2019 in lieu of termination, and was subsequently terminated by Defendant after being informed that he tested positive for THC in violation of the December 2019 Agreement. SMF ¶¶ 4-11, 17-18; SAMF ¶¶ 4-11, 17-18; RSAMF ¶ 66. Captain Brunetti was also subject to a 2007 career long agreement that permitted Defendant to terminate him if he violated its policies and procedures. SAMF ¶ 65; RSAMF ¶ 65. Like Plaintiff, Captain Brunetti tested

positive for a controlled substance in violation of Defendant's policies and of his 2007 career long agreement. SAMF ¶ 65; RSAMF ¶ 65. Defendant subsequently offered Captain Brunetti a new career long agreement in lieu of termination in April 2019. SAMF ¶ 66; RSAMF ¶ 66. As such, the treatment of Plaintiff and Captain Brunetti was nearly identical. Both Plaintiff and Captain Brunetti violated their 2007 career long agreements by testing positive for a controlled substance. Defendant then offered each of them a new 2019 career long agreement in lieu of termination. SAMF ¶¶ 64-65; RSAMF ¶¶ 64-65. Unlike Captain Brunetti, however, Plaintiff tested positive *again* in January 2020, violating the terms of his 2019 Agreement. SMF ¶¶ 17-18; SAMF ¶¶ 17-18. As such, the undisputed evidence establishes that Defendant did not treat Captain Brunetti more favorably. The undisputed evidence supports the conclusion that Defendant treated both employees the same, only electing to terminate Plaintiff after his second violation of Defendant's policies *after* signing his 2019 Agreement. The record demonstrates that Plaintiff and Defendant Brunetti do not share the same disciplinary history.

Plaintiff has shown commonalities between himself and Captain Brunetti, but ultimately fails to show that Captain Brunetti is a similarly situated employee. The distinctions between Plaintiff's and Captain Brunetti's disciplinary history are fatal to Plaintiff's *prima facie* racial discrimination claim. Plaintiff's allegations and evidence in support fail to establish that Captain Brunetti was treated more favorably by Defendant. Rather, the undisputed evidence suggests that Defendant treated Plaintiff and Captain Brunetti equally based on their disciplinary history. Plaintiff accordingly fails to establish a *prima facie* case of racial discrimination.

Moreover, even if Plaintiff had established a *prima facie* case of racial discrimination, the record supports that Defendant has proffered a legitimate, nondiscriminatory reason for Plaintiff's termination.

Case No. 22-cv-22640-BLOOM/Otazo-Reyes

### ii. Defendant's Legitimate, Nondiscriminatory Reasons

Defendant proffers a legitimate, nondiscriminatory reason for terminating Plaintiff's employment, namely, that Plaintiff violated the terms of his 2019 career long agreement by testing positive for a controlled substance. Defendant has shown that Plaintiff signed a career long agreement that gave Defendant the right to terminate Plaintiff for violations of its policies and procedures, Defendant was informed that Plaintiff violated the controlled substance policy, and Defendant subsequently terminated Plaintiff for violating that policy pursuant to its termination procedures. ECF No. [15-1] at 124, 192-97, 202-04; SMF ¶¶ 4-11, 17-18; SAMF ¶¶ 4-11, 17-18; RSAMF ¶ 66. Since the record demonstrates that Defendant fired Plaintiff for a legitimate, nondiscriminatory reason, the burden shifts to Plaintiff to demonstrate that Defendant's legitimate reason for terminating him was pretextual.

### iii. Whether Defendant's Proffered Legitimate, Nondiscriminatory Reasons are Pretextual

Because Defendant has provided a legitimate, nondiscriminatory reason for terminating Plaintiff's employment, Plaintiff must now "meet the employer's proffered reason head-on and rebut it; the plaintiff cannot succeed by merely disputing the wisdom of the employer's reason." *Wesley v. Austal USA, LLC*, 776 F. App'x 638, 644 (11th Cir. 2019). Plaintiff must show "*both* that the reason was false, *and* that discrimination was the real reason." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993) (emphasis in original).

Plaintiff does not explicitly rebut Defendant's proffered reason for his termination. Rather, Plaintiff points out that pretext is generally shown "if a claimant can demonstrate 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence.'" Response at 5 (citing *Combs v. Plantation Patterns, Meadowcraft, Inc.*, 106 F.3d 1519,

12

Case No. 22-cv-22640-BLOOM/Otazo-Reyes

1538 (11th Cir. 1997)). Plaintiff contends that Defendant "was not using the same protocols as the outside labs … was not following its own protocols," and that Plaintiff's "last test wasn't really positive." Response at 8. Plaintiff therefore attempts to rebut Defendant's proffered reason for his termination by demonstrating inconsistencies in Defendant's legitimate reasons for his termination, namely, because Defendant allegedly failed to follow its own testing protocols and because Plaintiff's drug test "wasn't really" positive.

Defendant responds that its proffered reason for terminating Plaintiff meets its burden under *McDonnell Douglas*. Defendant argues that Plaintiff has not pointed "to any record evidence of an intent to discriminate," either by Fire Chief Cominsky when he made the decision to terminate Plaintiff or by any other supervisor. Reply at 6-7. Defendant concludes that it is entitled to summary judgment absent any direct or circumstantial evidence of discrimination. *Id.*

As noted, Plaintiff must rebut Defendant's proffered reason for his termination by showing both that the reason was false, and that discrimination was the real reason. Plaintiff fails to make either showing. Plaintiff alleges that there were issues with Defendant's administration of his drug test and asserts that his positive test "wasn't really positive," but those allegations do not support finding that Defendant knew or even suspected that Plaintiff's test was in fact negative. *See Lopez v. AT&T Corp.*, 457 F. App'x 872, 874 (11th Cir. 2012) ("The inquiry into whether an employer's proffered reasons were merely pretextual centers on the employer's beliefs, not the beliefs of the employee or even objective reality."). Even assuming Plaintiff is correct that his drug test was not positive, that fact fails to create a triable issue since Defendant fired Plaintiff after being informed that Plaintiff tested positive for THC in violation of his career long agreement.

Plaintiff does not dispute that, at minimum, a doctor called Plaintiff on or about January 9, 2020, and informed Plaintiff that he tested positive for THC, and that Defendant subsequently

13

Case No. 22-cv-22640-BLOOM/Otazo-Reyes

terminated Plaintiff on that basis. ECF No. [15-1] at 83-87, 148; SMF ¶ 18; SAMF ¶¶ 18, 59. It is therefore undisputed that Defendant at least believed it was firing Plaintiff for violating his 2019 Agreement by testing positive for THC, Defendant had a basis to terminate Plaintiff for this violation, and Defendant did so pursuant to its termination procedures. SMF ¶ 18; SAMF ¶¶ 18, 59.

Accordingly, Plaintiff fails to show that Defendant's proffered reason for his termination was pretextual. Plaintiff has also failed to point to any evidence supporting an inference that racial discrimination was the real reason. Those deficiencies are fatal to Plaintiff's discrimination claim under *McDonnell Douglas.*

      iv.    **Circumstantial Evidence**

Plaintiff argues, alternatively, that even if Plaintiff failed to identify a similarly situated employee, the undisputed evidence "presents a convincing mosaic of circumstantial evidence" such that a jury could infer intentional discrimination, citing *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011)). In *Smith*, the Eleventh Circuit explained that a "plaintiff will always survive summary judgment if he presents circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent," and a plaintiff may do so by presenting "a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker …." *Smith*, 644 F.3d at 1328. Plaintiff contends that a jury could infer that Defendant's proffered reason for his termination was pretextual, and summary judgment is accordingly improper. *Id.*

Plaintiff's argument falls short. The record establishes that Plaintiff and Captain Brunetti are not similarly situated employees. The record is otherwise devoid of any indication that Defendant terminated Plaintiff due to racial animus. *See* SMF ¶¶ 23, 27-28, 30; SAMF ¶¶ 23, 27-28, 30. The

14

record evidence fails to create a mosaic of circumstantial evidence, convincing or otherwise, such that a jury could find that Defendant's proffered reason for Plaintiff's termination was pretextual. Defendant has met its burden to show that the undisputed evidence entitles it to judgment as a matter of law with respect to Plaintiff's racial discrimination claim. Defendant is accordingly entitled to summary judgment on Counts I and II of Plaintiff's Complaint.

### B. Disability Discrimination

Counts III and IV of Plaintiff's Complaint allege that Defendant violated the ADA and FCRA by firing Plaintiff due to his disability. To establish a *prima facie* case of disability discrimination under the ADA and FCRA,[4] Plaintiff must show that (1) he is a disabled, (2) he is a qualified individual, and (3) he was subjected to unlawful discrimination because of his disability. *Holly v. Clairson Indus., L.L.C.*, 492 F.3d 1247, 1255-56 (11th Cir. 2007).

Defendant argues that Plaintiff fails to show a *prima facie* case of disability discrimination because Plaintiff is not disabled, is not a qualified individual, and because Plaintiff was never subjected to unlawful disability discrimination. Plaintiff has not argued otherwise. The Court agrees that Plaintiff fails to show a prima facie case of disability discrimination. Plaintiff alleges that Defendant discriminated against him on the basis of his disability, namely, his eye condition. Complaint ¶¶ 21-23, 52-57. However, Plaintiff does not allege that he is a qualified individual, and the record evidence is devoid of any indication that Defendant discriminated against Plaintiff based on his eye condition. Further, Plaintiff concedes that Fire Chief Cominsky never discussed his eye condition. ECF No. [15-1] at 169. Plaintiff's allegations accordingly fail to support a *prima facie* disability discrimination claim. The remaining injuries Plaintiff alleges he suffered in the

---

[4] "Because Florida courts construe the FCRA in conformity with the ADA, a disability discrimination cause of action is analyzed under the ADA." *Wimberly v. Sec. Tech. Grp., Inc.*, 866 So. 2d 146, 147 (Fla. Dist. Ct. App. 2004).

Case 1:22-cv-22640-BB  Document 44  Entered on FLSD Docket 10/10/2023  Page 16 of 16

Case No. 22-cv-22640-BLOOM/Otazo-Reyes

course of his employment—including the injury that allegedly led to his positive drug test—fail to establish that Plaintiff is disabled, a qualified individual, or was discriminated against based on those injuries. Defendant is accordingly entitled to summary judgment on Counts III and IV of Plaintiff's Complaint.

### IV. Plaintiff's Motion to Amend Complaint

On August 28, 2023, Plaintiff filed its Motion to Amend, requesting that the Court grant leave to withdraw Counts III and IV of the Complaint. Defendant argues that Plaintiff has failed to show good cause for leave to file an amended complaint at this late stage in the proceedings. *See* ECF No. [39]. Plaintiff replies that good cause exists. *See* ECF No. [40]. The Court has already determined that Defendant is entitled to summary judgment as to all counts of Plaintiff's Complaint. Plaintiff's Motion to Amend is accordingly denied as moot.

### V. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Defendant's Motion for Summary Judgment, **ECF No. [16]**, is **GRANTED**.

2. Plaintiff's Motion to Amend, **ECF No. [32]**, is **DENIED as moot**.

3. Final Judgment shall be entered by separate order.

**DONE AND ORDERED** in Chambers at Miami, Florida, on October 8, 2023.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to: Counsel of Record